**CASE NO. 16-1150**

## In The UNITED STATES COURT OF APPEALS
## For The Fourth Circuit

|  |  |
|---|---|
| **JOHN CORRADI** | |
| **Appellant,** | |
| | |
| **v.** | |
| | |
| **OLD UNITED CASUALTY COMPANY** | |
| **Appellee.** | |

**APPELLANT'S BRIEF for JOHN CORRADI,**
**Appeal from the**
**U.S. District Court, Eastern District of Virginia, at Alexandria**

Lee Robert Arzt, VSB 13192
*Counsel for Appellant*
6802 Paragon Place, Ste 220
Richmond, VA 23230
804-282-9722 voice
804-282-1048 facsimile
arztlaw@aol.com

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __16-1150__          Caption: John Corradi v. Old United Casualty Company _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

John Corradi _____
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                             ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                 ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Lee Robert Arzt                          Date:      03/17/2016

Counsel for: John Corradi

## CERTIFICATE OF SERVICE
**************************

I certify that on ____03/17/2016____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

/s/ Lee Robert Arzt                                     03/17/2016
         (signature)                                       (date)

-2-

**CASE NO. 16-1150**

## In The UNITED STATES COURT OF APPEALS
## For The Fourth Circuit

**JOHN CORRADI**

    *Appellant,*

**v.**

**OLD UNITED CASUALTY COMPANY**

    *Appellee.*

**APPELLANT'S BRIEF for JOHN CORRADI,**
**Appeal from the**
**U.S. District Court, Eastern District of Virginia, at Alexandria**

Lee Robert Arzt, VSB 13192
*Counsel for Appellant*
6802 Paragon Place, Ste 220
Richmond, VA 23230
804-282-9722 voice
804-282-1048 facsimile
arztlaw@aol.com

## Table of Contents:

*Jurisdictional Statement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*1*

*Statement of Issues* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*Statement of Case* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*Course of Proceedings & Disposition Below* . . . . . . . . . . . . . . . . . . *2*

*Statement of Facts.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*Explication of Position.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*4*

*Summary of Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*

*Argument* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*

*Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*8*


I.   THE *ERIE* DOCTRINE WHICH HAS BEEN THE LAW OF THESE UNITED
     STATES FOR NEARLY 100 YEARS HAS BEEN VIOLATED IN THE CASE
     AT BAR RESULTING IN AN ERRONEOUS RULING BELOW. . . . . . .*8*

II.  THE VIRGINIA SUPREME COURT OPINION CONTAINED IN
     HARTMAN'S HOLDING CONTROLS THE LAW PERTAINING TO
     CORRADI'S FIRST PARTY PROPERTY INSURANCE CLAIM. . . . . . 13

III. THE *ERIE* DOCTRINE ALSO CONTROLS THE ENFORCABILITY OF THE
     VIRGINIA NONSUIT STATUTE AS VIRGINIA SUBSTANTIVE LAW,
     REQUIRED TO BE FOLLOWED IN VIRGINIA FEDERAL COURTS. . . 14

Text of relevant portions of statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Certificate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## Table of Authorities:

*Cases:*

***Erie R.R. v. Tompkins,*** 304 U.S. 64, 71-77, 58 S. Ct. 817 (1938). . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1,6,7,8,10,11,14,17**

***Campbell v. Johnson,*** 203 Va 43, (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**13**

***City of Martinsville v. Commonwealth Blvd. Assoc., LLC,*** 268 Va 697 (2004) . . . **13**

***Friedman v. Peoples Service Drug Stores, Inc.,*** 208 VA 700 (1968) . . . . . . . . . . . **13**

***Nash v. Jewell, 227 Va. 230, 315 S.E. 2d 825 (1984)*** . . . . . . . . . . . . . . . . . . . .**7**

***Rubenstein v. Ball Bros., Inc.,*** *(In re New England Fish Co.),* 749 749 F.2d 1277

(9[th]Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

**Semtek Int'l Inc. v Lockheed Martin Corp.,** 531 U.S. 497, (2001). . . . . . . . . . . . . .**17**

***Transit Cas. Co. v. Hartman's Inc.,*** **218 Va 703, 239 S.E. 2d 894 (1978).** . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **\*3,4,5,6,8,10,11,12,13,14**

## *Statutes & Other Authorities:*

***28 U.S.C. §1291, Final Decisions of District Courts.*** . . . . . . . . . . . . . . . . . . . **1**

***Va Code Ann. §38.2-2204. Liability Insurance on motor vehicles, ... "omnibus***

***clause."*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **\*3,5**

***Va Code Ann. § 8.01-380 Nonsuit*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **\*7**

**FRCP 41(a)(2)** *Court Sanctioned Voluntary Dismissal* . . . . . . . . . . . . . . . . . . . . . .**7**

***Moore's Federal Practice, Volume 17A, Chapter 124.*** . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8,9,10, 15,16**

*\*denotes references that occur throughout the brief*

## *Jurisdictional Statement:*

28 U.S.C. §1291 provides:

**§1291. Final decisions of district courts**

**The courts of appeals. . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States, . . .**

This is just such an appeal.

## *Statement of Issues:*

1.  Are federal trial Courts in diversity cases bound to follow the state substantive law as expressed by the highest appellate court in the state,(provided that there is not a federal issue which supersedes state law)?

2.  When the highest appellate state Court has issued a written opinion addressing a subject of substantive state law, even if the facts in the decided case turned the result in an opposite direction, where the Court suggests that given the case at bar's facts that the Court would grant the relief sought, is the federal trial Court bound by the stated intent in the holding in of the state's highest Court, or is the federal judge free to ignore it?

3.  When is a state procedural law so fundamental to the trial law in that state that it becomes substantive law, notwithstanding that the right is couched in procedural terms?

4.  In view of the *ERIE* doctrine and the cases following, can the Virginia right of non-suit be deemed anything but a substantive right?

1

### *Statement of case:*
### *A. Course of Proceedings:*

This is an appeal from a number of rulings and judgments of the United States District Court, for the Eastern District of Virginia, Alexandria Division. [App. 178,204,226,263,265,266,267,279, plus Consent Order granting attorney's fees] Most importantly, the trial Court below granted summary judgment in favor of the defendant insurance carrier denying coverage, and denied Appellant's crossing motion for summary judgment.

The Appellant in a conflicted time situation filed a motion for nonsuit under the Virginia Nonsuit Statute, [App. 136] with the idea that this would bring the proceedings to a halt, but it did not. The issues presented were never fully litigated in Appellant's opinion, but a Consent Order was entered allowing the case to proceed to fully litigate the issues of the crossing motions for summary judgment. [App. 236].

The proceedings below were commenced by the filing of a Complaint [App. 1] seeking the insurance proceeds for the total loss of the 1942 WACO historical Bi-Plane. The case was in trouble from the plaintiff's perspective and there was discussion over some time about changing counsel to current counsel. Discussions were perhaps too protracted. Actions were needed to be taken but time was evaporating and when the change did occur, there was an immediate conflict between the need for appearance at a hearing in a pretty messed up case and due to a sudden death, the immediate need to attend the military funeral of a 35 year pilot friend and client of counsel.

There being no time to enter into negotiations to get a continuance, plaintiff's counsel filed a nonsuit under Virginia state law, and left to go to the funeral in Tidewater, VA. Counsel sadly never made it to the funeral but was called back to a hearing that had just occurred anyway.

2

The damage done by the refusal of the District Court to consider the propriety of filing a non-suit motion under Virginia law, was cured by the entry of a Consent Order [App. 236] with the appreciated aid of the Court and opposing counsel. This permitted the parties go forward to address the issues presented by the Virginia Omnibus Act (Va. Code Ann. §38.2-2204), which contains law that required the elimination or disregard of insurance requirements that impose requirements greater than those enumerated by the government for permissive operators of motor vehicles.

Each party made their motions for summary judgment and filed memoranda in support and the US District Court found in favor of the insurance carrier, [App. 263,265] permitting the carrier to pay nothing for the lost aircraft, even though they were paid a full premium for the casualty loss of the aircraft, even though a supremely qualified relief pilot was at the controls at the time of the loss, even though the plaintiff alleged he did not know about the requirement to list pilots to be covered, because the policy contained a restricted pilot warranty requiring pilots to be listed on the policy to be covered, and this pilot was not listed.

This appeal is filed seeking the reversal of the US District Court's opinion, rulings and Order(s) based upon the **ERIE** doctrine, the Virginia Omnibus Statute *.Id* and the proper interpretation of the **HARTMAN** case, (*infra*).

## B. Statement of Facts:
### Adopted from the
### STATEMENT OF MATERIAL FACTS NOT IN DISPUTE [App. As
### accepted in Corradi's Memorandum App.225     ]

This lawsuit arises from the crash (the "Incident") of Plaintiff's 1942 Waco UPF-7 ("the Aircraft") during an airshow on June 29, 2014. (Statement of Material Facts Not in Dispute "SOMF", ¶¶ 3-4.) Plaintiff purchased an insurance policy for

3

the Aircraft in April of 2014. (SOMF", ¶ 3.) A true and accurate copy of the insurance policy ("the Policy"), which was provided by Old United Casualty ("Old United") and in effect at the time of the Incident, is attached to the Statement of Material Facts Not in Dispute as Exhibit "A." (SOMF", ¶¶ 1-4, 7.)

Coverage under the Policy is conditioned under Condition 4(a) and Item 7 upon operation of the Aircraft by "Approved Pilots" only. (SOMF", ¶¶ 8.) The "approved Pilots" under the Policy were John Corradi and John B. Corradi. (SOMF", ¶¶ 9.) Neither John Corradi nor John B. Corradi was operating the aircraft during the Incident. (SOMF", ¶¶ 10.) Bryon Stewart, the individual who was operating the aircraft during the Incident, was not an "Approved Pilot" under the Policy. (SOMF", ¶¶ 11.)

Plaintiff filed this action for breach of contract and seeking a declaratory judgment that Old United is responsible for paying $200,000.00 under the Policy for the damage caused to the Aircraft. In this action, Plaintiff seeks recovery exclusively for destruction to the Aircraft itself. (SOMF", ¶ 5.) Plaintiff does not allege liability to any third parties arising from the Incident. (SOMF", ¶¶ 6.)

## C. Explication of Position.

The Appellant, a former Navy Pilot, and retired major airline captain filed a motion for summary judgment on his first party, air crash insurance claim for the amount of the insured value of an historic bi-plane, a 1942 WACO, being permissively flown by a licensed pilot in an airshow in Bealeton, Virginia by the owner's relief pilot. In the case at bar, in distinction from the owner in the *HARTMAN* case, this owner/Appellant paid the premium to be covered hull insurance for the loss of the aircraft. (*Transit Cas. Co. v. Hartman's Inc.,* 218 Va. 703, 239 S.E.2d 894 (1978). *HARTMAN* is the most recent Virginia case that

4

discusses first party casualty claims in motor vehicle operator accidents, and is controlling in Virginia.

The permissive relief pilot was a retired military fighter pilot and the airshow's pilot safety officer, with not only normally qualifying experience flying the aircraft type but who was supremely qualified to operate the aircraft under any reasonable standards. The owner's hull coverage policy, analogous to comprehensive coverage for land vehicles, contained a written limitation on who could fly the aircraft with insurance coverage, which was alleged to have been unknown to the Appellant. Appellant argues that this insurance requirement that the pilot be listed on the policy to be covered, in addition to being licensed by the government is a violation of the Virginia Omnibus Statute, (Virginia Code §38.2-2204[1]), as interpreted by the current Virginia Supreme Court case *HARTMAN*.

Appellant argues that the Omnibus Statute and *HARTMAN* case taken together do not allow insurance carriers to limit insurance coverage by adding qualifications to licensed operators beyond those established by the government. From *HARTMAN'S* interpretation of the statute, it does not matter whether the claim is a first party or third party claim. If it were otherwise, the last pages of the

---

[1] § 38.2-2204. Liability insurance on motor vehicles, aircraft and watercraft; standard provisions; "omnibus clause."

A. No policy or contract of bodily injury or property damage liability insurance, covering liability arising from the ownership, maintenance, or use of any motor vehicle, aircraft, or private pleasure watercraft, shall be issued or delivered in this Commonwealth to the owner of such vehicle, aircraft or watercraft, or shall be issued or delivered by any insurer licensed in this Commonwealth upon any motor vehicle, aircraft, or private pleasure watercraft that is principally garaged, docked, or used in this Commonwealth, *unless the policy contains a provision insuring the named insured, and any other person using or responsible for the use of the motor vehicle, aircraft, or private pleasure watercraft with the expressed or implied consent of the named insured, against liability for death or injury sustained, or loss or damage incurred within the coverage of the policy or contract* as a result of negligence in the operation or use of such vehicle, aircraft, or watercraft by the named insured or by any such person;

opinion would not focus on the issue of whether or not whether the rule of reason required that the claimant have actually purchased that type of coverage from the insurer.

Ultimately, this case comes down to the Court's reading of *HARTMAN*. In *HARTMAN*, the Virginia Supreme Court makes much of the fact that the first party (owner's) claim for loss was denied because the policy under which the claim was made had no comprehensive coverage as a feature of the policy. Since there was no such coverage in the *HARTMAN* policy the Virginia Supreme Court was not about to write that coverage into the policy. In the case at bar however the policy contains comprehensive or hull coverage as a feature of the policy, which fact distinguished the case at bar from *HARTMAN*

. Here the owner of the aircraft paid for hull or collision coverage and the carrier had to calculate for the possible loss of the aircraft in its financial outlook. The Appellant is now claiming access to that coverage, which the language in *HARTMAN* supports.

In all respects this is a purely law case both below and in this appeal, with no material facts in dispute. All legal matters are open to decision by this Honorable Court, *de novo*.

This is an *ERIE* doctrine case in that the opinion in *HARTMAN*, meaning the law set out in *HARTMAN* is intended under *ERIE* to bind federal trial courts sitting in the Commonwealth of Virginia to try the case as a Virginia trial court would. This means that the law of this case is intended to be decided without reference to other state's or federal cases which were decided in derogation of the current state of the art of Virginia case on bring first party casualty claims. All of the other cases are not binding or relevant to the decision in the case at bar, only Virginia Supreme Court cases are binding.

Exactly the same kind of analysis exists in the decision of whether or not to recognize the Virginia Nonsuit Statute's[2] binding effect in Virginia federal trial courts. Under *ERIE,* we are required to look beyond form to the substance of the law to determine whether a law is procedural or substantive. In Virginia trial law, plaintiffs have the arrow of a non-suit[3] always in their quiver. It is couched as a procedural law, but the Appellant argues it is a substantive right.   There are procedural rights in state law that are more of a substantial nature and should be regarded as such in the federal Courts of that state. The plaintiff's right of nonsuit in Virginia law is substantive in its nature as it is the right conferred to plaintiffs to unilaterally end and restart a case as a substantive right.   The ability to ask permission for voluntary dismissal as in FRCP 41(a)(2) is not a substitute for the raw power of a plaintiff to pull the plug on a case and restart it per the statute. Appellant argues that litigants in diversity cases in Virginia retain the important right to nonsuit at will as a substantive right.

### *Summary of Arguments:*

I.    **THE *ERIE* DOCTRINE WHICH HAS BEEN THE LAW OF THESE UNITED STATES FOR NEARLY 100 YEARS HAS BEEN VIOLATED IN THE CASE AT BAR RESULTING IN AN ERRONEOUS RULING BELOW.**

II.   **THE VIRGINIA SUPREME COURT OPINION CONTAINED IN HARTMAN'S HOLDING CONTROLS THE LAW PERTAINING TO CORRADI'S FIRST PARTY PROPERTY INSURANCE CLAIM.**

---

2 Va Code Ann §8.01-380.  PLAINTIFF HAS ABSOLUTE RIGHT TO ONE NONSUIT. --Under this section, a plaintiff has an absolute right to one nonsuit. The election is his and if he insists upon taking the nonsuit within the limitations imposed by this section, neither the trial court nor opposing counsel can prevent him from doing so. *Nash v. Jewell,* 227 Va. 230, 315 S.E.2d 825 (1984).

[3] The absolute right to a do over at most any stage of trial.

7

III. **THE *ERIE* DOCTRINE ALSO CONTROLS THE ENFORCABILITY OF THE VIRGINIA NONSUIT STATUTE AS VIRGINIA SUBSTANTIVE LAW, REQUIRED TO BE FOLLOWED IN VIRGINIA FEDERAL TRIAL COURTS.**

### *Arguments:*

### Standard of Review:

As this appeal is entirely based upon a review of the law, the applicable standard of review is *de novo.* *Rubenstein v. Ball Bros., Inc.,* (*In re New England Fish Co.*), 749 F.2d 1277 (9th Cir. 1984).

## I.    THE *ERIE* DOCTRINE WHICH HAS BEEN THE LAW OF THESE UNITED STATES FOR NEARLY 100 YEARS HAS BEEN VIOLATED IN THE CASE AT BAR RESULTING IN AN ERRONEOUS RULING BELOW.

*Erie R.R. v. Thompkins,* has been the rule of law in the United States since the 1930's, yet its doctrine has been violated in the case at bar causing the erroneous result below. *Erie R.R. v. Tompkins,* 304 U.S. 64, 71-77, 58 S. Ct. 817 (1938). *Erie* doctrine underlies the CORRADI interpretation of the insurance law as expressed in his motion for summary judgment and CORRADI'S opposition to OLD UNITED'S motion for summary judgment yet the application of *ERIE'S* principals as refined over the years have not been properly applied.

CORRADI shall begin with reference to the bible of federal practice, Moore's Federal Practice, Volume 17A, Chapter 124:

> *The Erie Doctrine and Applicable Law* by **Linda S. Morris, Rita and Morris Atlas Chair in Advocacy at the University of Texas School of Law,...**

### *Scope of the Chapter*

8

This chapter discusses the *Erie* doctrine, which requires federal courts to apply state substantive law as the rule of decision in diversity jurisdiction cases. The chapter discusses analytical methods the Supreme Court has developed to distinguish between substance and procedure under the *Erie* doctrine, and the application of those methods to various *Erie* problems. This chapter also discusses how federal courts determine the content of state substantive law....

### A.    *ERIE DOCTRINE* [p. 124-8]

### 1. *DEVELOPMENT AND APPLICATION OF ERIE ANALYSIS*
§124.01 Federal Courts Apply State Substantive Law and Federal Procedure in Diversity Cases

The Federal Rules of Decision Act requires federal courts to apply state law as the rule of decision in civil cases, except when the Constitution, treaties, or statutes of the United States require or provide otherwise. (28 USC § 175 (Federal Rules of Decision Act)....

[T]he purpose of the Rules of Decision Act is to make certain that, in all matters except those in which some federal law is controlling, the federal courts exercising jurisdiction in diversity cases will apply state law, as set forth in state constitutions, statutes and judicial opinions. Judicial opinions include opinions enunciating state common law. (Federal Courts in diversity must apply state substantive law. *Erie R.R. v. Tompkins,* 304 U.S. 64, 71-77, 58 S. Ct. 817 (1938)).

The Court further intimated that by making common law under the *Swift* [prior] doctrine, the federal courts invaded rights the Constitution reserved to the states.... In any event, after *Erie,* federal courts sitting in diversity may no longer create a general federal common law, but must apply state law to resolve substantive issues. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S. Ct. 817 (1938).

<u>Under the *Erie* doctrine, federal courts in diversity cases perform the role of another state trial court applying state statutes and common law....</u> [emphasis added]

### 2.    DETERMINING CONTENT OF STATE SUBSTANTIVE LAW

### § 124.20 Binding Effect of State Court Decisions

**[1] Decisions of State's Highest Court Are Binding on Federal Courts**

**The state highest court is the final arbiter of state law. When state law provides the rule of decision under the *Erie* doctrine (see §§ 124.01 – 124.09), federal courts must generally accept a decision of the state's highest court as a definitive statement of state law.  *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 237-238, 61 S. Ct. 179, 85 L. Ed. 139 (1940).  The federal court is bound by the state's highest court even if it [p. 124-72] believes the decision unwise or incorrect.  *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 237, 61 S. Ct. 179, 85 L. Ed. 139 (1940).  (federal court must "ascertain from all the available data, what the state law is and apply it rather than to prescribe a different rule, however superior it may appear).  [*emphasis added*]**

This long reference to MOORES and the cases that support its analysis sets the background for CORRADI's argument that that the sole resource for the law of this case is contained within the Virginia Supreme Court case, *HARTMAN*, as it addresses he Virginia Omnibus Act and its meaning in the Commonwealth of Virginia.  The legal resources cited by the defendant, OLD UNITED while arguably more erudite than the *HARTMAN* analysis, is under *ERIE,* not relevant or applicable.  In a diversity case, if the highest court in the trial state has ruled, is doesn't matter what rulings exist in other states or in that state's federal districts or circuits.  Rulings interpreting the Virginia Omnibus Statute in ways that do not fall in accord with *Hartman* are required to be ignored.  For the purposes of the case at bar the federal district court is supposed to act, is bound to act, as a trial court in Virginia applying Virginia law only.  What has been recited here is Hornbook Law in these United States and even if the cases and arguments cited by defendants are

10

clearly superior in their analytical thinking, they must be disregarded for the purposes of this case.

The **ERIE** doctrine clearly and unequivocally requires that the Virginia Supreme Court **HARTMAN** case is the law of this CORRADI diversity case. The Virginia Omnibus Act and its legally required amendment to the insurance policy in the case at bar, is the required resource for the interpretation of the Virginia Omnibus Statute. **HARTMAN'S** words on the subject bind all Honorable Federal Courts to adhere to its statements of the Virginia Law.

> **[2] A contract of insurance, as any other contract, must be construed to give effect to the intention of the parties, if that intention can be fairly determined from the instrument when read as a whole. *HARTMAN,* p. 708.**

CORRADI adds, that this reading must by law include the provisions of the Virginia Omnibus Statute which do not permit the addition of motor vehicle operator requirements beyond those required by the government issuing the motor vehicle operator's license. Where there is a conflict between the restricted pilot warranty and the Omnibus language, the restricted pilot warranty must fail.

> **While any ambiguity must be resolved against the insurer, the construction adopted should be reasonable, and absurd results are to be avoided. *Id.* P 708.**

The last pages of the **HARTMAN** decision, are devoted to the analysis by Justice Carrico of what classes of insurance were included in the policy purchased in **HARTMAN.** Hartman purchased liability insurance only from this carrier, not collision or hull coverage.

The reason why it would be absurd to grant insurance coverage in **HARTMAN,** Justice Carrico said, and rightfully so, was that in **HARTMAN**, the

policy did not include collision or hull coverage to begin with! To do what the subrogation carrier in **HARTMAN** wanted, to grant collision or hull coverage in a case where there was no such coverage in the policy, was in fact an absurd result. In the CORRADI case, the case at bar, there is hull or collision coverage, (the opposite of the **HARTMAN** case) and the opposite result should obtain under any reasonable interpretation. Coverage should be granted.

The only believable interpretation of the last pages of the **HARTMAN** opinion is that with hull or collision insurance procured and in effect at the time of the loss, that the Virginia Supreme Court would have Ordered the insurance carrier, in our case OLD UNITED to pay the loss in full and that is what CORRADI seeks in the case at bar.

The case at bar's insurance policy, by law, includes the Omnibus statute which prohibits the addition of conditions to qualify a motor vehicle operator beyond those required by law, which provision nullified the restricted pilot warranty, as a matter of law.

In CORRADI, the owner of the aircraft paid for hull or collision coverage as a part of his policy. The insurance carrier had to calculate for an economic loss as a part of its acceptance of the premium but in the case at bar the carrier is attempting, so far successfully, to entirely avoid its contractual obligation to the policy owner to pay for his loss. This is illegal and wrong. The case below needs to be reversed.

## II.    THE VIRGINIA SUPREME COURT OPINION CONTAINED IN *HARTMAN'S*, HOLDING, CONTROLS THE LAW PERTAINING TO CORRADI'S FIRST PARTY PROPERTY INSURANCE CLAIM CASE.

Next we examine the issue of what language in an opinion is binding as a holding under Virginia law. This is the issue of *stare decisis* wherein we distinguish between language included within a "holding" and differentiating it from language

contained in "dicta." The premise is that a holding creates ***stare decisis*** but that dicta is merely instructive.

> **Under Virginia law as stated by the Supreme Court of Virginia, the issue of whether a statement is a part of the holding or dictum is resolved by analyzing whether the statement is "necessary to the disposition of the case." It is that simple. *Goodman v. Goodman*, 150 Va. 42, (1928); *Campbell v. Johnson*, 203 Va. 43, (1961); *Friedman v. Peoples Service Drug Stores, Inc.,* 208 Va. 700, (1968); and *City of Martinsville v. Commonwealth Blvd. Assocs., LLC*, 268 Va. 697, (2004). The cases that state this principal are too numerous to mention.**

Based upon the above simple statement of what is ***stare decisis,*** a reading of the last pages of ***HARTMAN*** pp.'s 708 to 709 makes it plain that the decision not to grant first party claim coverage was singularly based upon the Court's determination that there was no premium paid for this sort of coverage. Since the policy was without collision coverage it was impossible to create that coverage without violating the rule of reason. **(p. 709)**

The Corradi argument is that since ***HARTMAN,*** if the insured paid for hull or collision coverage he can use the Virginia Omnibus Statute, as a first party, to rightly claim access that collision or hull coverage. CORRADI should have won his case below on the law and recovered the insurance proceeds. ***HARTMAN*** completely settles the law in the Commonwealth of Virginia on the point of whether there can be first party claims for damages under the provisions of the Virginia Omnibus Statute. If the language was adjudged to be contained in dicta, which is not what CORRADI claims, then it is merely instructive of what the Virginia Supreme Court would do. Either way however, it's the only resource we have to determine what the Virginia Supreme Court wants in this situation to be done. Either way CORRADI should prevail.

The *HARTMAN* opinion cannot be avoided. It is clear that if **CORRADI'S** facts were *HARTMAN'S* facts, that *HARTMAN* would have won its case. Therefore, and for those reasons **CORRADI** should win this case, and the US DISTRICT COURT should be reversed.

### III. THE *ERIE* DOCTRINE ALSO CONTROLS THE ENFORCABILITY OF THE VIRGINIA NONSUIT STATUTE AS VIRGINIA SUBSTANTIVE LAW, REQUIRED TO BE FOLLOWED IN VIRGINIA FEDERAL TRIAL COURTS.

The U.S. District Court below was not amenable to the argument that the Virginia Nonsuit Statute should be enforced. Whether enforced over the application of the Federal Rules of Civil Procedure for Voluntary Dismissal at the onset of counsel's representation or in addition to it, is of no moment in the case at bar. The decision to disregard the Virginia nonsuit statute resulted in the need to make immediate accommodations to preserve the plaintiff's case, without the ability to brief the issue of the correctness of plaintiff's position. CORRADI'S argument is that the disregard of the right to nonsuit under Virginia law is an inappropriate subjugation of an important substantive right of plaintiffs under the laws of Virginia to a federal procedural rule that does not contain the important features of the state law and which therefore cannot supplant this profoundly substantive and important litigation right. This is another violation of the *Erie* doctrine, which is impermissible.

The basis for this argument is that there are laws that appear to be procedural but which are more substantive than procedural. Some procedural rights are more than that, amounting to state substantive rights which in the context of a diversity

14

case cannot be denied to a party.  We return to the same chapter referred to above in Moore's Federal Practice and we quote:

**§124.02 Determining Whether to Apply State Law or Federal Rule of Civil Procedure**

**[1]  Federal Rule Applies if Pertinent and Valid Under Rules Enabling Act**

**The Supreme Court's decision in *Hanna v. Plumer* provides federal courts with [p.124-12.1] guidance, under a construction of the Rules Enabling Act, to determine whether to apply a state rule or a conflicting federal procedural rule.**

**See Section 124.04[2] Rule May Not Abridge or Enlarge Substantive Rights**

**[p. 124-29] Concurring in *Shady Grove*, Justice Stevens rejected the idea that the only criterion for determining the validity is whether the federal law really regulates procedure.  He emphasized the Enabling Act's prohibition on federal rules that "abridge, enlarge or modify any substantive right," (28 U.S.C. § 2072(b)), concluding that there are some [state]procedural rules that federal courts must apply in diversity cases because they function as a part of the State's definition of substantive rights and remedies.  *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.,* ___ U.S. ___, ____, 130 S. Ct. 1431, 176 L. Ed. 2d 311, 329, 333 (2010) (Stevens, J.), concurring: "A federal rule, therefore, cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state created right").**

**§ 124.05 Rules Enabling Act Test Applied by Lower Courts**

**[M]ost courts simply apply the pertinent federal rule, noting that the rule is presumed valid under the Constitution and Rules Enabling Act, or that neither party has challenged the rule on that ground, [cite omitted].  In a few cases, lower federal courts have considered whether application of a federal rule would be invalid under the Rules Enabling Act because it would abridge, enlarge or modify state substantive rights,**

**[cite omitted] and in even fewer cases have held application of the federal rule invalid. [Cites to cases in other circuits omitted.]**

**[124-44]**

When CORRADI filed his non-suit in this case it was a conscious act. It was the intended expression of CORRADI'S right under the substantive law of the Commonwealth of Virginia to unilaterally end a case that had numerous faults which augured for a fresh start. Notwithstanding the Court's unwillingness to consider the possibility that the Virginia Nonsuit statute would continue in full force and effect in a federal trial court, with the help of the Court and the agreement of opposing counsel an accommodation was reached which failed to take into account the nonsuit rights of the plaintiff, but which permitted the case to progress, and CORRADI is genuinely grateful for that. Nonetheless, plaintiff believes his rights were trampled upon in this and CORRADI seeks to reverse the Order(s) pertaining to the imposition of the Federal Rules of Civil Procedure as trumping the Virginia Nonsuit Statute, and in particular seeks the reversal of the payment of Old United's attorney's fees by counsel to opposing counsel in the sum of ten thousand dollars, ($10,000.00).

The case of *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 121 S. Ct. 1021, 149 L. Ed. 2d 32, 2001 U.S. LEXIS 1951, 69 U.S.L.W. 4147, 14 Fla. L. Weekly Fed. S 109, 2001 Cal. Daily Op. Service 1569, 2001 Colo. J. C.A.R. 1046, **Cited by:** 121 S. Ct. 1021 p.1026 149 L. Ed. 2d 32 p.40 531 U.S. 497 p.504 , discusses the same *Erie* and statutory principals in connection with the preclusive effect of prior judgments or dismissals. The logic of the analysis is similar to the analysis of the right to use the Virginia Non-Suit Statute:

**(... the jurisdictional limitation of the Rules Enabling Act ( 28 USCS 2072(b) ) that federal rules of practice and procedure shall not abridge, enlarge, or modify any substantive right, and (b) in many cases, violate the federalism principle of Erie R. Co. v Tompkins (1938) 304 US 64 , 82 L Ed 1188 , 58 S Ct 817, by engendering substantial variations in outcomes**

16

**between state and federal litigation which would likely influence the choice of a forum;**

The analysis is of when shall prior litigation be preclusive of follow-on litigation, and whose rules shall apply. The federal court shall apply the state law, in diversity cases, albeit this is a complexly stated case. What is important to take away is that the U.S. Supreme Court here is not mindlessly imposing the federal procedural law but looking behind it to the state law to see what is being allowed or taken away from a litigant. In the case at bar taking away the right to a nonsuit under Virginia law denied CORRADI the state created right to stop the litigation entirely and then restart it, creating considerable expense and trouble that ensued from the application of the federal procedural rule, but which should not have been used to supplant the nonsuit statute under *ERIE* and the Rules Enabling Act.

Much of this argument has been about the *ERIE* doctrine and the acts enabling the promulgation of the federal rules of civil procedure, and it how it brushes against the division of the powers between the states and the federal government. We are looking at the skeleton underneath the flesh to be sure we are doing the right thing in how this case resolves. In the case at bar the right thing is to honor the rights of a plaintiff in a diversity case to have the legal rights given by the state in which he lives and where the incident occurred. The right thing is to give the Virginia Supreme Court the respect that is due the highest court in a state, and reverse the Judgments and Orders entered in this case.

## Conclusion:

For the reasons stated above, does CORRADI respectfully submit that he should prevail in this matter and the Orders and Judgments in this matter be reversed.

Respectfully Submitted
JOHN CORRADI
/s/ Lee Robert Arzt
By:_____
        Counsel

Lee Robert Arzt (VSB#13192)
Attorney-at-Law
6802 Paragon Place, Suite 220
Richmond, VA 23230
T 804-282-9722
F 804-282-1048
arztlaw@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of April, 2016, a true and correct copy of the foregoing pleading or paper was served using the Court's CM/ECF system with electronic notification of filing to counsel of record as follows:

*Counsel for Defendant Old United Casualty Company:*
Donald R. Andersen (Georgia Bar No. 016125)*
TAYLOR ENGLISH DUMA, LLP
1600 Parkwood Circle
Suite 400
Atlanta, GA 30339
(770) 434-6969 Telephone
(770) 434-7376 Fax

/s/Lee Robert Arzt

18

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. 16-1150          **Caption:** John Corradi v. Old United Casuality Companhy

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the   type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]    this brief contains _____ 5343 _____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]    this brief has been prepared in a proportionally spaced typeface using
   word converted to PDF            [*identify word processing program*] in
   Times New Roman Font 14         [*identify font size and type style*]; **or**

   [ ]    this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) Lee Robert Arzt VSB 13192

Attorney for John Corradi, Appellant

Dated: 04/26/2016